

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 21, 2023.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-52983-CAG |
| | § | |
| ISAAC GRIEGO AND | § | |
| REBECCA CISNEROS GRIEGO, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |

| | | |
|---|---|---|
| ISAAC GREIGO AND | § | |
| REBECCA CISNEROS GRIEGO, | § | |
|    Plaintiffs. | § | |
| v. | § | ADVERSARY NO. 22-05035-CAG |
| FGMS HOLDING, LLC AND | § | |
| OVATION SERVICES, LLC. | § | |
|    Defendants. | § | |

### ORDER GRANTING PLAINTIFFS ISSAC GRIEGO AND REBECCA CISNEROS GRIEGOS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 55)[1]

Came on to be considered the above-numbered adversary proceeding and Plaintiffs Isaac

Griego and Rebecca Cisneros Griegos' ("Plaintiffs," "Debtors," or "Griegos") Motion for

---

[1] "ECF" denotes the electronic case filing number in Adversary Proceeding 22-05035-cag and Bankruptcy Case filing number in 18-52983-cag.

Summary Judgment ("Motion") against FGMS Holdings, LLC and Ovation Services LLC ("Defendants") filed on May 1, 2023. (ECF No. 55). The Court has also considered the parties' responses and supporting evidence.[2] The Court notes that Defendants' Response is 22 pages, which exceeds the 20-page limit required under Local Rule 7007(b)(3). Moreover, the Response does not appear to be double spaced. The Court makes this observation because there are arguments in Defendants' Response that are either irrelevant or non-responsive to the Motion. For clarity, any argument not specifically addressed herein is deemed unavailing and denied. Moreover, when some of Defendants' arguments are read in isolation, they appear to have merit; but, when read in the context of this case, they have no application.

The Court took this matter under advisement without the necessity of convening a hearing on the Motion. For the reasons herein, the Court finds that Plaintiffs' Motion for Summary Judgment should be GRANTED.

## JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Plaintiffs' Complaint seeks the following: injunctive relief under 11 U.S.C. § 105; declaratory relief under 28 U.S.C. § 2201 and § 2202 that Defendants' debt has been discharged and Defendants' lien should be released; a determination that Defendants' failure to file a fee application pursuant to § 506(b) and Fed. R. Bankr. P. 2016 disallows Defendants' claim for attorney's fees and costs; and, a declaratory judgment that Defendants misapplied plan payments.[3] Plaintiffs assert that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (L). Both parties have consented to this Court's jurisdiction to enter a final order. (ECF No. 23–

---

[2] Defendants filed their Response to the Motion on July 7, 2023. (ECF No. 69). Plaintiffs filed their Reply on July 14, 2023. (ECF No. 70).
[3] Unless otherwise noted, all references are to Tile 11, 11 U.S.C. § *et seq*.

24). As such, the Court finds that it has the requisite statutory authority to enter a final order in this proceeding.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Federal Rule of Bankruptcy Procedure 7056 applies Federal Rules of Civil Procedure ("Rule(s)") 56 to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated that "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

When the movant has produced competent and sufficient evidence, "its opponent must do more than simply show there is some metaphysical doubt as to the material facts" for the court to deny summary judgment. *Id.* The "adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56(e)) (internal quotations omitted). The inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* Conversely, if the record "taken as a whole, could not lead

a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial."

*LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

**FACTUAL AND PROCEDURAL BACKGROUND**

This adversary proceeding was filed after Plaintiffs successfully completed their chapter 13 plan early, paying a dividend to unsecured creditors of 100%.[4] Defendants filed a secured proof of claim in the Plaintiffs' bankruptcy case in the amount of $5,670.20.[5] Plaintiffs previously executed a promissory note and deed of trust granting a security interest in Plaintiffs' homestead to Defendants.[6] Defendants were treated as a secured creditor in Debtors' Amended Chapter 13 Plan.[7] There is no dispute that Plaintiffs paid Defendants' secured claim with post-petition interest in full. Defendants' deed of trust[8] and promissory note[9] provide that Defendants may seek reasonable attorney's fees, court costs, and collection fees for enforcing their debt. Defendants did not file an application for reasonable attorney's fees and costs in Plaintiffs' bankruptcy case. Near the end of Plaintiffs' chapter 13 case, the chapter 13 trustee ("Trustee") moved to have Defendants' promissory note deemed paid in full and the Defendants' lien released.[10] Defendants objected to Trustee's Motion, stating *inter alia*, that Defendants' lien could not be released until Defendants'

---

[4] *See* Bankruptcy No. 18-52983, ECF No. 31 (Amended Chapter 13 Plan) and ECF No. 36 (Order Confirming Chapter 13 Plan) stating that unsecured creditors will be paid 100% of their allowed unsecured claims.

[5] *See* Claims Register, Bankruptcy No. 18-52983, Claim 5-1.

[6] Texas Tax Code Ann. § 32.06(a)(2) provides that "Transferee" means a person who is licensed under Chapter 351, Finance Code, or is exempt from the application of that chapter under Section 351.051(c), Finance Code, and who is:(A) authorized to pay the taxes of another; or (B) a successor in interest to a tax lien that is transferred under this section.

[7] Section 7.8 of Debtors' Amended Chapter 13 Plan in part states:
> Creditors within this class shall retain their liens on the collateral that is security for their claims until the earlier of: (1) the date the underlying debt, as determined by non-bankruptcy law, has been paid in full; or (2) the date discharge is entered under § 1328. If the case is dismissed or converted without completion of all Plan payments, the liens shall be retained by the creditors pursuant to applicable non-bankruptcy law.

[8] Claims Register, Bankruptcy No. 18-52983, Claim 5-1, page 42 of 48.

[9] Claims Register, Bankruptcy No. 18-52983, Claim 5-1, page 40 of 48.

[10] Bankruptcy No. 18-52983, ECF No. 92 (Trustee's Motion to Deem Promissory Note paid in Full and Lien to Be Released).

post-petition attorney's fees, costs, and charges were paid.[11] Defendants asserted that Plaintiffs' Amended Chapter 13 Plan did not preclude Defendants from collecting post-petition attorney's fees and costs nor did Defendants need to seek reimbursement from Plaintiffs' chapter 13 estate.[12]

The Court denied Trustee's Motion to Deem Promissory Note Paid in Full and Lien to Be Released, finding that:

> Ovation, as a tax lien transferee, is subrogated to all rights and remedies possessed by the taxing authorities who transferred the lien. "[A]ny statutory lien that is valid under state law remains valid through bankruptcy unless invalidated by some provision of the Code." *In re Simmons*, 765 F.2d 547, 556 (5th Cir. 1985). Trustee did not cite a Code provision that would support invalidating Ovation's otherwise valid lien. Moreover, Ovation has demonstrated it is a transferee of a tax lien that is "subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit." Tex. Tax. Code § 32.065(c). Under Texas law, "[t]ax lien transferees are permitted to charge interest, attorney's fees for collection, and attorney's fees if the property owner files for bankruptcy." *In re Reed*, Case No. 17-52875-RBK (citing Tex. Fin. Code § 351.0021; Tex. Tax Code §§ 32.06, 32.065).[13]

The Court also held that "to the extent Trustee requests an order that Ovation's lien is paid in full and should be released, the Court finds that Trustee must file an adversary proceeding."[14] Shortly after the Court denied the Trustee's Motion to Deem Promissory Note Paid in Full and Lien to Be Released, Plaintiffs filed this Adversary Proceeding. Plaintiffs subsequently received their chapter 13 discharge on June 13, 2022.[15]

Plaintiffs filed their Complaint on April 22, 2022. Defendants first moved for a more definite statement under Fed. R. Civ. P. 12(e).[16] The Court denied Defendants' Motion for More

---

[11] Bankruptcy No. 18-52983, ECF No. 96 at p.3 (Ovation Services LLC's Objection to Trustee's Motion to Deem Promissory Note Paid in Full and Lien to Be Released).

[12] *Id*. at pp. 3–4.

[13] Bankruptcy No. 18-52983, ECF No. 114, at pp. 6–7 (Order Denying Trustee's Motion to Deem Promissory Note paid in Full and Lien to Be Released).

[14] *Id*. at 7.

[15] Bankruptcy No. 18-52983, ECF No. 149.

[16] Adversary No. 22-05035, ECF. No.7 (Motion for More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e)).

Definite Statement on August 8, 2022, finding that the Complaint met the pleading requirements under Fed. R. Civ. P. 8.[17] Defendants then moved to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) and (6) alleging lack of subject matter jurisdiction; lack of standing; and failure to state a claim upon which relief can be granted.[18] After extensive briefing, and convening a hearing on Defendants' Motion to Dismiss, the Court issued its Order Granting in Part and Denying in Part Defendants FGMS Holdings, LLC and Ovation Services, LLC's Motion to Dismiss Complaint with Prejudice.[19]

The Court, in ruling on Defendants' Motion to Dismiss, determined that it had subject matter jurisdiction over the adversary proceeding under 28 U.S.C. § 1334. The Court also concluded that the Chapter 13 Trustee, who was also Co-Plaintiff to the Complaint, lacked standing and was dismissed from the proceeding. The Court also dismissed with prejudice Count I of the Complaint requesting injunctive relief under § 105 to preclude Ovation from passing on the costs to defend this lawsuit to the estate or seeking to collect any legal fees from the Griegos or their homestead. The remaining Counts II-IV of the Complaint were not dismissed, and Defendants were ordered to file an answer to Counts II-IV of the Complaint.[20]

After Defendants attempted to file multiple answers and counterclaims, the Court struck ECF Nos. 41, 42, 43 because Ovation failed to obtain written consent from the parties or ask for leave from the Court. This directly violates Rule 15(a). Accordingly, the operative Answer and

---

[17] Adversary No. 22-05035, ECF. No.14 (Order Denying Motion for More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e)).
[18] Adversary No. 22-05035, ECF. No. 16 (Defendants FGMS Holdings, LLC and Ovation Services LLC's Motion to Dismiss Complaint with Prejudice).
[19] Adversary No. 22-05035, ECF. No. 29.
[20] Adversary No. 22-05035, ECF. No. 31 (Order Setting Briefing Deadlines).

Counterclaims is the First Amended Answer/Counterclaims filed at ECF No. 38."[21] Plaintiffs filed their Motion for Summary Judgment on May 1, 2023.[22]

### PARTIES' CONTENTIONS

Plaintiffs argue that summary judgment should be granted because there are no material contested issues of fact and judgment should be granted to Plaintiffs as a matter of law. Plaintiffs assert that Defendants should have filed an application under § 506(b) and applicable state law for attorney's fees and costs. Moreover, Plaintiffs contend that Defendants have taken inconsistent positions as to whether § 506(b) applies to a claim for attorney's fees that accrued for both pre-confirmation and post-confirmation periods. Plaintiffs allege that Defendants' inconsistent positions regarding the application of § 506(b) bars Defendants from being compensated under the doctrine of judicial estoppel. Plaintiffs further contend that Defendants are precluded from seeking compensation because Defendants allegedly failed to comply with Fed. R. Bankr. P. 2016 by filing an application setting forth the services rendered, and the amounts requested. Plaintiffs assert that their chapter 13 plan paid Defendants' proof of claim in full, including post-petition interest. As such, Plaintiffs assert that satisfaction of Defendants' debt should extinguish Defendants' lien.

In opposition, Defendants argue that Plaintiffs' failure to provide an affidavit in support of Plaintiffs' summary judgment evidence (or lack thereof) precludes the Court from granting Plaintiffs summary judgment. Defendants argue that Plaintiffs needed to raise judicial estoppel in their pleadings prior to summary judgment. Therefore, because Plaintiffs did not assert judicial estoppel in their pleadings as required under Fed. R. Civ. P. 8, judicial estoppel is waived. Defendants also contend that statements in their pleadings to the Court are not judicial admissions.

---

[21] Adversary No. 22-05035, ECF. No. 61 (Order Granting Plaintiffs' Motion to Strike Defendants' Amended Answers and Counterclaims: ECF No. 42 and ECF No. 43).
[22] Adversary No. 22-05035, ECF. No. 55.

Defendants argue that § 506(b) does not apply to post-confirmation attorney's fees and costs. Defendants maintain that their post-petition fees are not discharged under the plan and their liens pass through bankruptcy and cannot be avoided. Finally, Defendants argue that Plaintiffs have failed to mitigate their damages and have unclean hands; thus, the Plaintiffs are not entitled to summary judgment.

### DISCUSSION

**The Supreme Court and the Fifth Circuit have held that § 506(b) only applies to pre-confirmation creditor fee applications in chapter 13 cases.**

The parties dispute if § 506(b) requires Defendants to file an application for reasonable attorney's fees and costs. This Court previously held in ***In re Perez*** that § 506(b) applies to Defendants. 648 B.R. 833 (Bankr. W.D. Tex. 2023), *appeal docketed*, No. 5:23-cv-00829 (W.D. Tex. 2023).[23] This Court held:

> The Fifth Circuit has held that a secured creditor must make application under § 506(b) for the payment of its attorney's fees and costs in the context of a foreclosure sale. ***In re 804 Congress, L.L.C.***, 756 F.3d 368 (5th Cir. 2014). The case involved distribution of proceeds from the foreclosure of an office building. *Id.* at 371. The substitute trustee proposed to pay the trustee's commissions and the secured creditor (Wells Fargo) attorney's fees without bankruptcy court approval. *Id.* at 372. The bankruptcy court found that it had jurisdiction over the sale proceeds and their distribution. *Id.* The bankruptcy court also determined that because Wells Fargo did not make application with the court or provide evidence in support of Wells Fargo's fees and expenses, that Well Fargo's fees and expenses should be denied. *Id.* On appeal, the district court found that after the bankruptcy court lifted the stay, the bankruptcy court no longer had jurisdiction over the disposition of the assets. *Id.*

> The Fifth Circuit held that "federal law governs what is to be distributed to a secured claimant that is oversecured." *Id.* at 373. (footnote omitted). The Fifth Circuit further stated:

> By the terms of § 506(b), an oversecured creditor may recover, on a secured basis, "fees, costs, or charges provided for under the agreement . . . under which such claim arose," such as the Deed of Trust at issue in this case, but only to the extent

---

[23] The Defendants in ***Perez*** are the same parties in this adversary proceeding.

8

that the fees, costs, or charges are reasonable. We do not read § 506(b) as applying only when a sale occurs by the trustee in bankruptcy under § 363.

***804 Congress***, 756 F.3d at 373.

The Fifth Circuit also held that when Congress enacted § 506(b), Congress intended that federal law should govern the enforcement of attorney's fees provisions, notwithstanding contrary state law. ***Id***. at 374 (footnote omitted). Further, the Fifth Circuit noted that the Supreme Court in ***Ron Pair*** "clearly indicated that § 506(b) would govern post-petition claims for fees, costs, or charges provide for under the agreement from which the claim arose." ***Id***. at 375 (footnote omitted). The Fifth Circuit stated that the Supreme Court in ***Ron Pair*** found that the recovery of fees, costs, and charges is allowed only if they are reasonable and provided for in the agreement. ***Id***. (footnote omitted).

***Perez***, 648 B.R. at 844.

The Court incorporates its holding in ***Perez***. In ***Perez***, the Court had to determine the application of § 506(b) to Defendants' fees for the following period: petition date to confirmation date. Notably, the Supreme Court has held that § 506(b) applies to a creditor's fee request for attorney's fees and costs from petition date through date of confirmation of the chapter 13 plan. ***Rake v. Wade***, 508 U.S. 464, 468 (1993) ("It is generally recognized that the interest allowed by § 506(b) will accrue until payment of the secured claim or until the effective date of the plan." *See* 3 COLLIER ON BANKRUPTCY ¶ 506.05, p. 506–43, and n.5 (15th ed. 1993)). The Fifth Circuit applies § 506(b) similarly. ***In the Matter of T-H New Orleans Ltd. P'ship***, 116 F.3d 790, 797 (5th Cir. 1997) (§ 506(b) applies only from the date of filing through the confirmation date) (citation omitted).

9

**The Court will not apply judicial estoppel in this matter.**

The parties have disputed whether Defendants are subject to judicial estoppel because of Defendants' alleged inconsistent positions regarding the application of § 506(b) to pre-confirmation and post-confirmation attorney's fees and costs.[24] It does not matter here.

Defendants may have taken inconsistent positions regarding the application of § 506(b) to its fees and costs, but case law is clear that Defendants are generally not required under § 506(b) to seek post-confirmation attorney's fees and costs from the chapter 13 estate. Issues such as competent summary judgment (raised by Defendants)[25] or multiple pleadings invoking application or non-application of § 506(b) (raised by Plaintiffs) are not determinative of the issue at bar—§ 506(b) does not apply (with one limited exception) to creditor fee applications for post-confirmation fees in chapter 13 cases.

As the Fifth Circuit has noted, "judicial estoppel is an equitable doctrine invoked by the court at its discretion." *United States ex rel. Long v. GSD&M Idea City, LLC*, 798 F.3d 265, 271 (5th Cir. 2015) (citation omitted). The Fifth Circuit found that a trial court's decision to apply judicial estoppel is based upon whether the party taking inconsistent positions in separate proceedings would give that party an unfair advantage or disadvantage against the opposing party. *Id*. (citations omitted). The Court does not believe that is present in the case at bar. Judicial estoppel does not apply here because Defendants cannot be paid for their post-confirmation fees and costs

---

[24] The Fifth Circuit has held that judicial estoppel may apply in situations where a party has taken inconsistent positions in different lawsuits. *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (*en banc*). The Court agrees with Plaintiffs that Fed. R. Civ. P. 8 does not require a plaintiff to plead judicial estoppel as an affirmative defense. Moreover, judicial estoppel is not defined as an affirmative defense under Fed. R. Civ. P. 8(c)(1).

[25] The Court agrees with Plaintiffs that the Court can take judicial notice of facts not subject to reasonable dispute. This includes statements made in the court's docket and pleadings filed of record. *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990). Plaintiffs did not need to file an affidavit in support of their summary judgment evidence for facts that the Court can take judicial notice.

from the chapter 13 estate under § 506(b). However, the Court notes that § 506(b) is not determinative of Plaintiffs' remaining causes of action.

**Rule 2016 applies to Defendants, and Defendants were thus required to file a Rule 2016(a) mandatory disclosure.**

Fed. R. Bankr. P. 2016 provides in relevant part, "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Defendants argued in *Perez* that Rule 2016 did not apply to them because Defendants were not estate professionals and that the Fifth Circuit's decision in *In re Wilborn*, 609 F.3d 748 (5th Cir. 2010) questioned the applicability of Rule 2016 to secured creditors. This Court disagreed, finding:

> The Court observes that the plain text of the Rule refers broadly to "an entity" seeking compensation and explicitly discusses applications filed to pay a creditor's attorney. Fed. R. Bankr. P. 2016(a). Subsections (b) and (c) of Rule 2016 set out specific requirements for disclosures by debtors' counsel and petition preparers who seek compensation from the estate. Fed. R. Bankr. P. 2016(b)-(c).

> *Wilborn* concerned post-petition fees charged by secured creditor Wells Fargo to a putative debtor class of homeowners in chapter 13 bankruptcies. The putative class alleged that Wells Fargo's practice of charging post-petition fees without disclosure avoided court oversight and thus violated § 506(b) and Rule 2016. *Wilborn*, 609 F.3d at 750–51. *Wilborn* arises in the procedural posture of a motion to certify a class under Federal Rule of Civil Procedure 23. (*Id*. at 755). The *Wilborn* court noted "disagreement between the bankruptcy courts as to the scope of the requirement under § 506(b) of the Bankruptcy Code and Rule 2016 for lenders to obtain court approval before assessing contractually-owed fees." (*Id*. (collecting contrasting cases in n.19)). In the next sentence, the *Wilborn* court wrote that "[f]or purposes of reviewing the certification order, [it would] assume, without deciding, that prior disclosure and approval are necessary." (*Id*. (citing *Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007) (federal courts cannot assess the merits of a case at class certification))).

> This Court finds both *Wilborn's* assumption and reason for declining to rule on the issue instructive. *Wilborn's* tone contradicts Ovation's position that *Wilborn* casts doubt on a requirement for secured creditors to file a Rule 2016 application for compensation. The *Wilborn* court "assume[d]" that Rule 2016 disclosure and court

11

> approval are necessary for a secured creditor to be compensated from the estate for fees and costs. 609 F.3d at 755. Moreover, *Wilborn* reads as if the procedural posture (class certification) was the only thing keeping the Fifth Circuit from reaching the issue. *Id*. In other words, *Wilborn* implies that secured creditors like Wells Fargo and Ovation must comport with Rule 2016 to receive compensation from the estate.

*Perez*, 648 B.R. at 845–46.

Plaintiffs assert that Rule 2016 requires compulsory disclosure as a prerequisite for seeking fees and expenses. Plaintiffs argue that without having full disclosure of Defendants' fees and expenses, the Court cannot ensure a debtor's full compliance with the requirements of chapter 13 and a debtor will not get a fresh start. Moreover, Plaintiffs argue that if a lender does not disclose unknown attorney's fees and expenses, a debtor's ability to cure an arrearage or maintain payments is circumspect if a debtor does not know about post-confirmation attorney's fees and costs.

Defendants now argue that Rule 2016 does not apply to Defendants' attorney's fees and costs because Plaintiffs' homestead is not estate property and therefore any claims that relate to non-estate property would not be subject to court review.[26] Further, Defendants argue that their post-confirmation fees and costs are not covered under the chapter 13 plan and that there would be no point in seeking attorney's fees and costs from the estate because there are (were) insufficient funds to pay Defendants' attorney's fees and costs.

The Court agrees with Plaintiffs that the chapter 13 plan vested Plaintiffs' homestead in the chapter 13 estate and that all plan payments are property of the estate under § 1306. Plaintiffs note that the reason there are no estate funds to pay Defendants' asserted attorney's fees and costs is because of Defendants' unreasonable legal positions taken in this case that necessitated the filing of this adversary proceeding.

---

[26] Bankruptcy No. 18-52983, ECF No. 96 at p.3 (Ovation Services LLC's Objection to Trustee's Motion to Deem Promissory Note Paid in Full and Lien to Be Released).

In Defendants' Response to the Motion, Defendants argue that Fifth Circuit precedent holds that a secured creditor has no obligation to include all amounts in its proof of claim. *See Wells Fargo Bank, N.A. v. Titus Chinedu Oparaji (In re Oparaji)*, 698 F.3d 231, 236 (5th Cir. 2012) (explaining that a creditor is not required to seek the full amount to which it is entitled to in its amended proof of claim). Further, Defendants argue that any attempt to compel a secured creditor to include its post-confirmation attorney's fees and costs would unnecessarily expand the scope of § 1305. *Id.* at 237.[27] Defendants posit that by not seeking their post-petition attorney's fees and costs, Defendants are ensuring that Plaintiffs get their discharge and negotiate with Defendants directly post-discharge.

Plaintiffs correctly note that *Oparaji* is not dispositive of the issues in this proceeding. *Oparaji* involved a creditor's claim against the same debtor in two consecutive chapter 13 cases. *Id.* at 236–37. *Oparaji* considered whether a creditor's alleged failure to assert post-petition fees and costs related to a debtor's first chapter 13 case precludes that same creditor from pursuing payment of post-petition attorney's fees and costs in the debtor's second chapter 13 case. *Id.* The Fifth Circuit held that that the creditor was not precluded from being paid all its prior claim from the first case in the debtor's second case. *Oparaji* does not address the issue of whether Defendants needed to file a Rule 2016 disclosure in Plaintiffs' chapter 13 case. *Id.* These arguments do not address the merits of the application of Rule 2016 to Defendants.

The Court recognizes that at least one bankruptcy court has concluded that Rule 2016(a) does not apply to mortgage creditors. *In re Padilla*, 389 B.R. 409, 442–43 (Bankr. E.D. Pa. 2008).

---

[27] Section 1305(a) states in relevant part that "A proof of claim may be filed by any entity that holds a claim against the debtor--(1) for taxes that become payable to a governmental unit while the case is pending; or (2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan." Defendants do not provide an explanation as to how § 1305(a), which applies to government creditors, applies to a private lender. Further, Defendants do not explain how Plaintiffs' debt is a consumer debt under § 1305.

The Pennsylvania *Padilla* court concluded that Rule 2016 only applies to an entity seeking compensation from the estate. *Id*. As such, if an entity is not required to seek payment from the estate, then Rule 2016(a) does not apply. *Id*. The Pennsylvania *Padilla* court read both § 506(b) and § 1322(b)(5) together to conclude that these provisions of the Code do not require a secured creditor to seek compensation for attorney's fees and costs from the estate. *Id*. Therefore, where a secured creditor has post-confirmation attorney's fees and costs, and its secured claim will not be paid in full through the chapter 13 plan, Rule 2016(a) does not apply.[28]

The Pennsylvania *Padilla* court also noted that in cases where a secured claim is paid in full, also known as a "Payoff Plan," the result is different:

> In a Payoff Plan, the debtor proposes to pay off the entire secured claim and is obliged to pay post-confirmation interest as a condition of confirmation. *See id.* § 1325(a)(5)(B)(II). After the completion of the plan, the debtor receives a discharge of the underlying debt. *See id.* § 1328(a). Thus, the interplay among §§ 1325(a)(5)(B)(II) and 1328(a) supports the conclusion that a secured creditor that fails to augment its prepetition claim by invoking § 506(b) during the pendency of the bankruptcy case loses the ability to do so after the conclusion of the bankruptcy case. Further collection efforts are prohibited by the debtor's discharge.

*Padilla*, 389 B.R. at 440.

This Court agrees with the Pennsylvania *Padilla* decision. In circumstances where a secured creditor's claim is paid in full through a chapter 13 case, a secured creditor must file § 506(b) application for attorney's fees and costs. This wholly differs from a situation where a long-term debt with arrears will continue after a debtor receives a chapter 13 discharge.

---

[28] Nonetheless, the *Padilla* court did observe that:
> From a policy perspective, a rational, and perhaps even compelling case, can be made that the bankruptcy system should impose disclosure and/or other procedural requirements on a secured creditor's right to assess legal expenses arising postpetition in a case in which the creditor's claim is being treated and cured in a confirmed chapter 13 plan through 11 U.S.C. § 1322(b)(5). The debtor's performance of the postpetition contractual obligations takes place within the context of a court supervised financial rehabilitation process. Any assessments by the secured creditor for legal expenses incurred postpetition constitute part of the amount necessary to cure the default and directly impact the debtor's prospects for a successful chapter 13 rehabilitation. *Padilla*, 389 B.R. at 437.

The Court also finds the reasoning of the Bankruptcy Court of Southern District of Texas persuasive regarding whether Rule 2016(a) applies to post-confirmation attorney's fees and costs in chapter 13 cases. ***Padilla v. Wells Fargo Home Mortgage (In re Padilla)***, 379 B.R. 643 (Bankr. S.D. Tex. 2007). In the Texas ***Padilla*** case, the lenders argued that § 1322(b)(2) preserves the lender's contract rights throughout bankruptcy and that secured creditors are free to charge expenses and fees without court authorization. ***Padilla***, 379 B.R. at 649. Debtors in Texas ***Padilla*** argued that § 506(b) and Rule 2016(a) govern a lender's entitlement to attorney's fees and costs and that those fees and costs are subject to court authorization. ***Id***.

The Texas ***Padilla*** court began its analysis by acknowledging that § 506(b) does not apply to post-confirmation fees. ***Id***. at 657. Unlike the Bankruptcy Court for the Eastern District of Pennsylvania, the Southern District of Texas found Rule 2016(a) "does not distinguish between pre- and post-confirmation attempts to collect Reimbursable Expenses. The Rule's plain-language covers Reimbursable Expenses sought anytime after an estate comes into being and for so long as it remains in existence." ***Padilla***, 379 B.R. at 657. As to Rule 2016(a)'s application to chapter 13 cases and their administration, the court observed:

> A Bankruptcy Court is responsible for "administer(ing) the estate in an efficient and equitable manner, and protect(ing) the assets of the estate from depletion". ***In re Hudson Shipbuilders, Inc.***, 794 F.2d 1051, 1055 (5th Cir. 1986). Congress created the Bankruptcy Rules to help Courts fulfill their administrative responsibilities. Federal Rule of Bankruptcy Procedure 1001 states that the Rules are to be "construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Federal Rule of Bankruptcy Procedure 1001. Moreover, Congress intended for Courts to apply the Rules broadly. Federal Bankruptcy Rule 1001, Advisory Committee Note (1983) ("These rules apply to *all* cases filed under the Code *except* as otherwise *specifically* stated") (emphasis added). Moreover, the primary purpose of bankruptcy laws is to ensure an efficient and just administration of a debtor's affairs. ***Katchen v. Landy***, 382 U.S. 323, 328, 86 S. Ct. 467, 15 L. Ed.2d 391 (1966) ("This Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period.'") (quoting ***Ex parte Christy***, 44 U.S. 292, 3 How. at 312–14 (1845)).

***Padilla***, 379 B.R. at 658.

Additionally, the Bankruptcy Court for the Southern District of Texas noted that the court "cannot administer an estate in a just, speedy, inexpensive, efficient, and equitable manner without requiring creditors to file a Rule 2016(a) application for Reimbursable Expenses that creditors seek to collect post-confirmation." ***Id***. at 659. Moreover, the court correctly observed that "[w]ithout 2016(a), parties in interest, the chapter 13 trustee, the debtor and the Court would have no meaningful ability to determine whether mortgage lenders are complying with § 1327(a) or whether mortgage lenders are collecting unauthorized fees and expenses in violation of an order confirming a chapter 13 plan." ***Id***. The court also recognized that Rule 2016(a) applications are necessary so that debtors can exercise their rights to cure defaults. ***Id***. at 661.

Most importantly, the court held that Rule 2016(a) ensures that debtors receive their fresh start and that debtors cannot receive a fresh start if mortgage lenders can charge a debtor's account without disclosure. ***Id***. In another opinion, that court found that collecting fees and costs without filing a Rule 2016 application would violate the order confirming plan. ***Cano v. GMAC Mortgage Corp. (In re Cano)***, 410 B.R. 506, 534 (Bankr. S.D. Tex. 2009). In ***Cano***, the order confirming the plan established payment of the lender's claim without providing for attorney's fees and costs. ***Id***. The ***Cano*** court reasoned that a mortgage lender should not be able to disrupt a confirmed plan's payment scheme by diverting amounts dedicated to mortgage arrears of attorney's fees and costs without court approval. ***Id***.

Defendants argue, based upon applicable case law, that Defendants do not have to seek payment from the bankruptcy estate. *See **Oparaji***, 698 F.3d at 237 (holding that Wells Fargo was not compelled to seek post-petition amounts that accrued in debtor's first chapter 13 case in a debtor's second chapter 13 case). Defendants reason that they can simply avoid seeking payment

16

of their post-confirmation attorney's fees and costs by not filing a Rule 2016(a) disclosure of fees and compensation. The ***Cano*** court found that this argument precludes a debtor's fundamental right to a fresh discharge. ***Cano***, 410 B.R. at 534. The ***Cano*** court explained that in not applying Rule 2016(a) mandatory disclosure requirements to secured creditors would ignore the mandate of Fed. R. Bankr. P. 1001 that "Rules are to be 'construed to secure the just, speedy, and inexpensive determination of every case and proceeding.'" ***Id***. Defendants maintain that having Plaintiffs not pay their attorney's fees and costs during the pendency of their case does not violate this mandate. The Court disagrees and finds that without court supervision and approval of Defendants' roughly $61,000.00 in attorney's fees and expenses, Plaintiffs have not received the fresh start that they should have as a result of successfully completing their plan.

Finally, Defendants do not address why the Texas Finance Code would not apply to them in a bankruptcy case. The Texas Finance Code provides that a "contract between a property tax lender and a property owner may require the property owner to pay the following costs after closing: . . . to the extent permitted by the United States Bankruptcy Code, attorney's fees and court costs for services performed after the owner files a voluntary bankruptcy petition." Tex. Fin. Code Ann. § 321.0021(a)(5) (West 2021). Defendants have consistently argued that they cannot be compelled to comply with Rule 3002.1 and its noticing provisions on post-petition fees and expenses. This Court agrees with that assertion.[29]

Further, the Court agrees that § 506(b) generally does not apply to post-confirmation attorney's fees in costs in chapter 13. That said, given Defendants' assertion that their lien enjoys a special status under applicable state law, Defendants do not explain why they should follow the Texas Finance Code requirements and have their attorney's fees and costs paid through a chapter

---

[29] ***In re Reed***, No. 17-52875, 2021 WL 4395821, at *5 (Bankr. W.D. Tex. Sept. 24, 2021), *accord* ***Propel Fin. Serv. v. Woodruff***, No. 3:21-CV-152, 2022 WL 1556418, at *4–5 (S.D. Tex. May 17, 2022).

13 plan. The Court finds that Defendants' failure to file a Rule 2016(a) disclosure of compensation is fatal to Defendants' assertion that they may seek their attorney's fees and cost outside of bankruptcy. The Court grants summary judgment on Plaintiffs' assertion that Defendants' failure to file a Rule 2016(a) disclosure is a bar to Defendants receiving any attorney's fees and costs in this case.

**Plaintiffs' confirmed chapter 13 plan fully paid Defendants' pre-petition claim with interest and Defendants' lien is extinguished.**

Plaintiffs argue that Defendants are bound by § 1327.[30] Section 1327 provides in relevant part that a confirmed plan binds a creditor to the terms of the plan and that the debtor's property that is vested under the plan is free and clear of any interest provided for in the plan. Section 7.8 of Debtors' Amended Chapter 13 Plan in part states:

> Creditors within this class shall retain their liens on the collateral that is security for their claims until the earlier of: (1) the date the underlying debt, as determined by non-bankruptcy law, has been paid in full; or (2) the date discharge is entered under § 1328. If the case is dismissed or converted without completion of all Plan payments, the liens shall be retained by the creditors pursuant to applicable non-bankruptcy law.

Section 1327, when read in combination with Section 7.8 of Plaintiffs' chapter 13 plan, provides that Defendants' claim is discharged and the lien extinguished when Defendants' pre-petition claim is paid in full with interest. Plaintiffs argue that the Court should apply its holding in ***In re Perez*** and find that the Defendants' lien should be released and the debt discharged.

---

[30] Section 1327 states:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Defendants reiterate their argument that their lien cannot be extinguished, and the debt discharged, based upon Defendants' construction of *Oparaji*. Defendants contend that because *Oparaji* decided that post-petition fees and costs that arose in the first chapter 13 case and were not paid could be asserted in the second chapter 13 case is dispositive of the issue that their debt and lien are enforceable post-discharge. *Oparaji* does not discuss the application of § 1327 and what happens to a secured claim that is paid through a chapter 13 plan. But *Oparaji* at its core considers the application of judicial estoppel to a creditor's claim that is augmented in a debtor's second chapter 13 case for expenses and costs not requested in the debtor's first chapter 13 case. 698 F.3d at 236–38. *Oparaji* is not dispositive of the issue of the binding effect of a confirmed chapter 13 plan and a debtor's subsequent discharge.

Defendants further argue that claims arising after confirmation from a contractual relationship are not barred by a confirmation order. Defendants assert that *In re Texaco Inc.* stands for the proposition that Defendants' post-petition claim for attorney's fees and costs for breaches of contract are not discharged in bankruptcy. 254 B.R. 536, 559–60 (Bankr. S.D.N.Y. 2000). *Texaco* is in appositive to the case at bar. The court in *Texaco* considered if a breach of a lease post-confirmation in a chapter 11 case would result in a claim being discharged by the confirmation order. The court found that:

> Simply stated, the basic rule is that claims arising after confirmation from a contractual relationship are not barred by a confirmation order. It is only where the liability asserted in a claim is based upon a breach of contract that occurred before confirmation that the claim must be filed in the bankruptcy. Potential claims for liabilities for breach of obligations which might occur after confirmation cannot be filed before confirmation even if they could be anticipated.

*Texaco*, 254 B.R. at 560.

*Texaco* has no application to the case at bar. A chapter 11 discharge for a corporate debtor is different than a discharge under § 1328 because a discharge under § 1141(d) only applies to pre-

confirmation debts. Moreover, the issue in **Texaco** was whether a debtor's failure to assume a lease under § 365, which is not analogous to Defendants' failure to file a Rule 2016(a) disclosure.

In this case, § 7.8 of the Plaintiffs' chapter 13 plan and § 1327 of the Code relate to claims that arose prior to date of discharge.

Defendants also argue that creditors can recover legal fees provided for in a contract even where the underlying debt is discharged. Defendants rely on **In re Sure-Snap Corp.** for the proposition that Defendants can recover their attorney's fees and costs in circumstances where the underlying debt is discharged. 983 F.2d 1015 (11th Cir. 1993). The Eleventh Circuit noted that Sure-Snap's chapter 11 plan only discharged pre-confirmation debts. *Id.* at 1018. Moreover, **Sure-Snap** involved the question of whether counsel could get its fees for prosecuting an appeal post-confirmation. *Id.* The court concluded that the claim for post-confirmation appellate attorney's fees was not discharged under the plan and § 1141(d). *Id.* Defendants attempt to argue the holding in **Sure-Snap** regarding appellate fees for a post-confirmation appeal is the same as Defendants collecting on fees and costs that accrue during a debtor's chapter 13 case. **Sure-Snap** is not analogous to the case at bar. Section 1327(a) states that "the provisions of a confirmed plan bind the debtor and each creditor" regardless of whether that creditor's claim is provided for under the plan. Finally, § 7.8 of Plaintiffs' plan states that the creditor's lien is extinguished upon payment of the underlying debt.[31] The plain language of § 1328(a) states that "the court shall grant the debtor a discharge of all debts provided for by the plan . . . ."

---

[31] Defendants similarly argue that in **Bennett**, the court held that post-petition fees incurred post-discharge for an act of a debtor (such as Plaintiffs filing this adversary proceeding) are not discharged. **In re Bennett**, No. 09-36637, 2012 Bankr. LEXIS 3050 (Bankr. S.D. Tex. June 28, 2012). The issue in **Bennett** was whether a creditor could get legal fees arising from a state court action for debtor misconduct that occurred post-discharge. The court found that claims for post-discharge conduct were not discharged under § 1328. That is not the situation here.

Defendants argue in their briefing that lien avoidance does not apply to Defendants because their claim is oversecured and cannot be avoided under § 1325(a)(5)(B)(i). As such, Defendants argue that because the collateral subject to Defendants' lien is worth more than Defendants' pre-petition debt, the lien cannot be avoided because security remains for the enforcement of their debt. Defendants additionally argue that their lien passes through bankruptcy unaffected by a debtor's discharge in chapter 13. Defendants further posit that because they have an allowed claim, Defendants can then rely upon the loan documents in support of their claim for enforcement of the unpaid attorney's fees and costs. Incredulously, Defendants suggest that it was Plaintiffs' responsibility to advise Defendants of the necessity of filing a fee application for their attorney's fees and costs even though Rule 2016 and § 506(b) require the party seeking reimbursement to file the requisite application. These arguments are unavailing and not responsive to the Motion.

As an initial matter, the Court has previously held that whether a lien passes through bankruptcy is not dispositive of the issues in this adversary proceeding. *Perez*, 648 B.R. at 842–43. This Court explained in *Perez*:

> Ovation argues that its lien cannot be discharged until its post-petition attorney's fees and costs are paid. Ovation reasons that because liens survive discharge until satisfied in full, and because it does not intend to seek payment of its post-petition attorney's fees and costs through the bankruptcy, the lien will pass through bankruptcy. After the lien has passed through bankruptcy, Ovation will still have recourse against the Debtor and may seek payment of its postpetition attorney's fees and costs after discharge, if the Debtor obtains a discharge.
>
> Ovations cites *In re Simmons* and *Matter of Howard* to support its position that unsatisfied liens survive a bankruptcy discharge. No party disputes the bedrock principal that liens not satisfied in bankruptcy survive bankruptcy. *See Simmons*, 765 F.2d at 556 ("It is clear under the Code that any statutory lien that is valid under state law remains valid through bankruptcy unless invalidated by some provision of the Code."). Ovation is correct that both *Simmons* and *Howard* draw upon this basic bankruptcy premise.
>
> But neither *Simmons* nor *Howard* is analogous to this case. A secured creditor in *Simmons* was incorrectly listed in the debtor's plan as unsecured. *Simmons*, 765

21

F.2d at 549. The creditor did not object to the plan, so its status under the plan was never corrected. *Id*. at 549–50. In a related adversary proceeding, the debtor argued that because the creditor did not object at confirmation, the creditor was bound by how the plan treated the creditor. *Id*. at 550–51. The Fifth Circuit held that a plan is not the proper means to object to a proof of claim. *Id*. at 553. Much of *Simmons* reasoning focuses on putting the secured creditor on notice that its lien may be at risk if it does not participate at confirmation. *Id*. at 552–53. "*Simmons* represents a limited exception to the general rule" "that a confirmed plan is *res judicata* as to all parties who participate in the confirmation process" because a debtor must object to a claim to challenge its status as secured so the creditor is on notice. *Howard*, 972 F.2d at 641 (italics in original).

The plan in *Howard* provided that the secured creditor would be paid $500 of its debt in full compromise of the debtor's claim against Sun for unfair and deceptive trade practices. *Id*. at 640. The debtors did not object to the creditor's proof of claim; and the creditor did not object to plan confirmation. *Id*. Applying *Simmons*, the Fifth Circuit determined that the creditor was not on notice that its lien was at risk if it did not participate in confirmation because the debtors never objected to the proof of claim. *Id*. at 642. Because the debtors in *Howard* never objected to the creditor's claim, the creditor was not bound by the treatment of its claim in the confirmed plan. *Id*.

Thus, *Simmons* and *Howard* are about what a debtor must do to challenge a secured creditor's claim (object to put the creditor on notice) and what effect the debtor's (in)action has on whether the treatment of the claim under the plan binds the creditor. Here, it is Ovation who objects; and Ovation does not object because the Plan aims to challenge the status of Ovation's claim. This case is factually and procedurally distinct from *Simmons* and *Howard*. Moreover, though *Simmons* and *Howard* reference the fundamental principal that unsatisfied liens are not discharge, that concept does not address the ultimate issue before the Court.

*Perez*, 648 B.R. at 842–43. (internal footnotes omitted).

The proper analysis is whether Plaintiffs' chapter 13 plan can discharge all of Defendants' unpaid attorney's fees and costs due to the operation of §§ 1327 and 1328, and the language in § 7.8 of Plaintiffs' plan. The Court finds that it does.

The Court finds persuasive the reasoning of the First Circuit's Bankruptcy Appellate opinion in *In re Echevarria*.[32] The court in *Echevarria* had to decide if a secured creditor who filed a proof of claim for a sum certain, without a provision for additional charges or interest,[33] and waited for completion of plan payments before asserting a claim for interest, would have an *in rem* claim for interest. *Id*. at 187. Notably, the creditor in *Echevarria* relied upon the Fifth Circuit's decision in *In re Simmons* to assert that it could enforce its *in rem* remedies. *Id*. Like this Court, the court in *Echevarria* found *Simmons* distinguishable from the case at the bar. *Id*. Rather, the *Echevarria* court found the Seventh Circuit's reasoning *In re Chappel* "compelling" if a secured creditor can collect unpaid interest after discharge. *Id*. at 188. The *Echevarria* court noted:

> The [Seventh Circuit in *Chappel*] court further explained that pursuant to 11 U.S.C. § 1327(a), a confirmed Chapter 13 plan binds creditors to its terms. "As a general rule, the failure to raise an 'objection at the confirmation hearing or to appeal from the order of confirmation should preclude . . . attack on the plan or any provisions thereof as illegal in a subsequent hearing.'" *Id*. at 782 (quoting *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir.1983) (other citations omitted)). Because the secured creditor had ample opportunity to object to its treatment under the plan and failed to do so, it was barred thereafter from seeking interest on its mortgage. The Seventh Circuit also noted that there was no evidence of a scheme by the debtor to defraud the secured creditor.

*Echevarria*, 212 B.R. at 188.[34]

---

[32] *In re Echevarria*, 212 B.R. 185, 187 (B.A.P. 1st Cir. 1997), aff'd, 141 F.3d 1149 (1st Cir. 1998) ("[W]hen a lower court produces a comprehensive, well-reasoned decision, an appellate court should refrain from writing at length to no other end than to hear its own words resonate.").

[33] This factual distinction in *Echevarria* does not matter here because the underlying principle is that the creditor waited to enforce its claim for post-petition interest until after the plan payments were completed. The court found any claim for post-petition interest was barred.

[34] The *Chappel* court noted the following cases also hold that the "[t]he provisions of a confirmed [Chapter 13] plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As a general rule, the failure to raise an "objection at the confirmation hearing or to appeal from the order of confirmation should preclude ... attack on the plan or any provision therein as illegal in a subsequent proceeding." *Matter of Gregory*, 705 F.2d 1118, 1121 (9th Cir.1983); *accord In re Szostek*, 886 F.2d 1405, 1413 (3d Cir.1989); *In re Rincon*, 133 B.R. 594, 596 (Bankr.N.D.Tex.1991) (collecting cases); *In re Barnes*, 125 B.R. 484, 485–86 (Bankr.E.D.Mich.1991) (collecting cases); *In re Blair*, 21 B.R. 316, 317 (Bankr.S.D.Cal.1982) (applying rule to claim for interest under section 506(b)); *In re Chappel*, 984 F.2d 775, 782 (7th Cir. 1993).

Additionally, the confirmed plan controls the debtor-creditor relationship unless the plan is modified, and the plan's binding effect is a new agreement and is fully enforceable by the debtor if the debtor does not default. *In re Sanders*, 243 B.R. 326, 330–31 (Bankr. N.D. Ohio 2000). The *Sanders* court held that when adequate notice is provided to claimants regarding the plan confirmation process, most courts have relied on § 1327 to find that further litigation of all issues which could have been litigated before or at the confirmation hearing are prohibited. *Id.* (citations omitted).

The Court finds this analysis persuasive. Defendants argue that their attorney's fees and costs of roughly $61,000 are attributable to Plaintiffs' conduct post-confirmation. Defendants miss the point. The reason that Defendants' attorney's fees and costs are so large is because Defendants failed to address the payment of their claims for attorney's fees and costs during the Plaintiffs' chapter 13 case.

Defendants had multiple options to enforce their post-confirmation attorney's fees and costs. For example, Defendants could have objected to the plan and asked that any post-petition attorney's fees and costs be provided for under the plan. Once the Defendants noted that they were accruing substantial fees and costs, Defendants could have filed a § 1305(a) claim and had the claim allowed (assuming Defendants could file a § 1305(a) claim). The Defendants also could have moved to dismiss the case for cause under § 1307(c). Defendants could have filed a notice, such as a Rule 3002.1 notice, advising the Court and the creditors that Debtors were incurring substantial attorney's fees and costs. Most importantly, had the Defendants taken any action during Debtors' chapter 13 case, the Court that is most uniquely situated to deal with all the issues discussed herein, could have rendered a decision on the reasonableness of Defendants' attorney's fees and costs.

24

Nonetheless, Defendants did nothing. The Court finds that summary judgment is granted to Plaintiffs that the confirmed plan and the Plaintiffs' chapter 13 plan bar Defendants' assertion of post-confirmation attorney's fees and costs.

**Defendants' assertion that Plaintiffs are not entitled to summary judgment because of failure to mitigate damages and having unclean hands is unavailing. Further, the Court will not grant summary judgment to Defendants on the allowance of their attorney's fees and costs.**

Defendants suggest two reasons why summary judgment should be denied to Plaintiffs based upon Plaintiffs alleged improper conduct. Defendants allege that Plaintiffs have unclean hands because Plaintiffs failed to disclose the value of a Hidalgo County state court cause of action in their bankruptcy schedules. This lawsuit, according to Defendants, was filed after Plaintiffs received their discharge. Defendants argue that the nondisclosure of the lawsuit and the failure to disclose the lawsuits' value should preclude Plaintiffs from recovering anything from Defendants. In addition, Defendants state that this adversary proceeding was concocted by Plaintiffs and the Trustee for the purpose of harming Defendants and causing Defendants financial distress, which could result in Plaintiffs obtaining a judgment for damages from Defendants. As such, Defendants argue that Plaintiffs have unclean hands given the nondisclosure of a state court lawsuit and that the basis of this adversary proceeding was to cause Defendants financial harm. The Court disagrees.

Plaintiffs' bankruptcy case paid all creditors in full, so there is no improper action. Even if Plaintiffs alleged nondisclosure was material, there is no harm because all creditors were paid. Moreover, Plaintiffs did not file this adversary proceeding to collect a windfall, but to have a judicial adjudication that Defendants' debt was paid in full and the lien released. The fact that the Trustee was a party to this lawsuit illustrates that the Trustee supports Plaintiffs getting a full discharge. Finally, as noted in this Order, Defendants had ample opportunity to get paid through

Plaintiffs' chapter 13 plan but refused to do so. Defendants' posture in this litigation has necessitated more legal fees, not the Plaintiffs. Plaintiffs do not have unclean hands in this litigation.

Defendants also argue that this litigation and the Plaintiffs filings in their chapter 13 bankruptcy case have been unreasonable and have caused Defendants to incur substantial attorney's fees and costs. Defendants maintain that all their attorney's fees and costs are reasonable. Defendants suggest that Plaintiffs' contesting the existence of Defendants' lien after the underlying debt was paid is untenable under applicable law. Therefore, Defendants argue that had Plaintiffs simply accepted Defendants' legal position, legal fees and costs would have been mitigated. Moreover, Defendants contend Plaintiffs' insistence in litigating this matter is an indication that Plaintiffs have not mitigated their damages by causing Defendants to incur fees and costs.[35] This assertion is nonsense.

Plaintiffs had no option but to sue Defendants to get the full extent of their chapter 13 discharge. Further, Defendants simply do not want to litigate their attorney's fees and costs in this Court. Defendants believe that they should be able to file suit in state court and ask a state court judge to adjudicate their attorney's fees and costs should any debtor disagree with the amount of Defendants' attorney fees and costs.

Defendants' refusal to allow this Court to adjudicate their attorney's fees and costs is troubling. A chapter 13 discharge is supposed to give a debtor a fresh start free from debt but for those debts excepted from discharge under § 523. Historically, debtors enjoyed a broad chapter 13 discharge until Congress has added to § 523 several debts or obligations that cannot be discharged.

---

[35] The failure to mitigate damages is generally a question of fact that would not be resolved by summary judgment. *Operating Tech. Elec., Inc. v. Generac Power Sys., Inc.* No. 4:13-CV-871, 2014 WL 4960136, at *6 (N.D. Tex. Oct. 2, 2014).

As a result, a chapter 13 discharge has drastically narrowed over time. Now Defendants wish to add to that burden by insisting that their attorney's fees and costs not be adjudicated in a court most familiar with the legal issues and circumstances regarding Defendants' indebtedness.

This Court recognizes that there will be instances in which a debtor will be unable to pursue Defendants' attorney's fees and costs in a chapter 13 plan. But if that is the result, at least a debtor will have incurred the opportunity to attempt to pursue bankruptcy with all the debtor's debts being paid through a chapter 13 plan. Defendants instead want a special exception to their attorney's fees and costs that no other party would have.

Finally, for the purposes of addressing Defendants' assertion of summary judgment on attorney's fees and costs, the Court will not grant summary judgment to Defendants on the reasonableness of their attorney's fees and costs. The Court finds that it is incredulous to award attorney's fees and costs of $61,000 for a debt of roughly $6,000 that was paid in full with interest through a summary judgment motion. The Court finds the reasonableness of Defendants' attorney's fees and costs a factual issue. Defendants' summary judgment motion is denied.[36]

### CONCLUSION

The Court grants Plaintiffs summary judgment for the reasons stated herein and that Defendants claim for post-confirmation attorney's fees and costs are disallowed and deemed satisfied. Further, Defendants' lien is deemed is extinguished. It is therefore ORDERED, ADJUDGED, and DECREED that:

Defendants' claim for all attorney's fees and costs are disallowed and unenforceable.

Defendants' lien is extinguished and released.

---

[36] The Court has considered Defendants' Answer to Complaint and Counterclaims. (Adversary No. 22-05035, ECF No. 38). The Court notes that Defendants' Counterclaims assert the same argument addressed here, including the issue of unclean hands. The Court, for the reasons stated in this Order, finds all the arguments unavailing.

Defendants' must file a release of lien in the property records where Defendants' lien is recorded.

Defendants are enjoined from collecting any remaining debt and enforcing any lien Defendants' assert against Plaintiffs.

Plaintiffs may make an application for attorney's fees and costs pursuant to Fed. R. Bankr. P. 7054 and Local Rule 7054.

Plaintiffs are ORDERED to prepare a form of Judgment consistent with the Court's Order within ten days of entry of this Order.

All other relief requested is DENIED.

# # #